UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JASON BUTLER,** | |
| Plaintiff, | Case No. _____ |
| vs. | JUDGE: |
| **U.S. CARGO AND COURIER SERVICE, LLC**, | MAGISTRATE JUDGE: |
| | **JURY DEMAND** |
| Defendant. | |

## COMPLAINT

Now comes Plaintiff JASON BUTLER ("Plaintiff") by and through counsel, and brings this Complaint (Doc#1) against U.S. CARGO AND COURIER SERVICE, LLC ("US Cargo")("Defendant")

## INTRODUCTION

1. Plaintiff, a former delivery driver for US Cargo, brings this lawsuit against Defendant for statutory and common law violations that stem from Defendant's misclassification of Plaintiff as an independent contractor, rather than an employee.

2. As a condition of employment, US Cargo drivers are required to sign a form contract entitled the "Independent Contractor Agreement" ("Agreement") that mischaracterizes each driver as an independent contractor. The Agreement is designed to conceal the actual relationship between Defendant and its drivers, that of employer and employee. As a result, US Cargo Drivers are deprived of the rights and protections guaranteed by Ohio and federal law to

employees, including employer-financed workers compensation coverage, unemployment insurance benefits, and overtime benefits.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over this action pursuant to 29 U.S.C. §§ 201, *et. seq.* of the FLSA, 42 U.S.C § 12117 and 28 U.S.C. § 1331.

4. This Court has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367 as to claims under the Ohio Wage Acts, the Ohio Constitution and Ohio Revised Code Chapter 4112.

5. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because at all times relevant hereto, Defendant employed Plaintiff in this District, a substantial portion of the practices complained of herein occurred in this District, Defendant conducted substantial business in this District, and Defendant has received substantial revenue as a result of doing business in this District.

## PARTIES

**Plaintiff**

6. Plaintiff Jason Butler is an adult individual residing at 8446 Ethan Court, Fairfield, OH 45014. Plaintiff worked as a delivery driver for US Cargo out of the terminal in Cincinnati, Ohio from approximately April 9, 2009 until approximately April 2015.

7. At the beginning of Plaintiff's employment with US Cargo, Defendant classified Plaintiff and categorized him as an employee. After approximately two (2) years of working for U.S. Cargo, Plaintiff was informed by Defendant that they would be "converting" him to work as an independent contractor and that if he objected to this classification, he would not be able to work for U.S. Cargo. Despite this change in classification, Plaintiff continued to perform the same

job duties without any significant change, except that he serviced a new route.

8. US CARGO AND COURIER SERVICE, LLC is a limited liability company incorporated in the State of Pennsylvania and registered to do business in Ohio. US Cargo provides regional courier and small package delivery services to businesses and financial institutions, with Terminals located in West Virginia, Pennsylvania, and Ohio.

9. US Cargo is an 'employer" as defined under Ohio Revised Code Section 4112.01.

10. Plaintiff was an opt in Plaintiff in a lawsuit on this issue against Defendant, Case number 2:16-cv-330. Jason filed his Opt-In Consent on April 24, 2018.

11. On February 22, 2019 the conditional certification of the class in case number 2:16-cv-330 was decertified and opt in plaintiffs, including Dannie, were given sixty (60) days to re-file their individual cases without losing the benefit of the statutory tolling.

## FACTS

12. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

13. Plaintiff was misclassified as an independent contractor throughout the duration of his employment.

14. Although US Cargo hires both "independent contractors" and "employees" to operate its package delivery services, US Cargo requires the purported "independent contractors" to sign, as a condition of their employment, a form contract entitled the "Independent Contractor Agreement" (hereinafter "Agreement") that mischaracterizes each driver as an independent contractor.

15. US Cargo used actual employees in the same independent contractor delivery position held by Plaintiff.

16. During all relevant times to this Complaint, Defendant has been an "employer" as that term is defined by the FLSA, O.R.C. Chapter 4111, and Ohio Constitution Art. 2 §34a.

17. During all relevant times to this Complaint, Defendant has been engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendant constituted an enterprise engaged in commerce within the meaning of the FLSA.

18. During all relevant times to this Complaint, Defendant's annual gross volume of sales made or business done was not less than $500,000.

19. Based on the economic realities of the relationship between US Cargo and Plaintiff, it is clear that Plaintiff is an "employee" for purposes of FLSA coverage, because: (a) US Cargo micromanaged the manner in which Plaintiff performed his work, leaving Plaintiff with little independent discretion or control over his job; (b) Plaintiff had virtually no opportunity for profit or loss depending upon his managerial skill; (c) the services rendered by Plaintiff did not require any special skills beyond those easily obtained through routine on-the-job training; (d) Plaintiff held a permanent position and could not realistically pursue other business opportunities; and (e) the services rendered by Plaintiff are an integral part of US Cargo's business (i.e. delivering packages).

    a. Plaintiff worked as a delivery driver for US Cargo out of the Cincinnati terminal from approximately June 20, 2012 to approximately July 24, 2015, and was misclassified as an independent contractor throughout the duration of his employment.

20. Plaintiff signed an Independent Contractor Agreement while he worked for US Cargo.

21. Plaintiff provided services to US Cargo as an individual from approximately April

9, 2009 to approximately April 2015.

22. US Cargo exercised a high degree of control over Plaintiff and his job duties. Such control includes, but is not limited to, the following actions:

  a. Plaintiff was supervised and managed by a terminal manager or assistant terminal manager.

  b. Plaintiff was required to comply with detailed instructions regarding both written and unwritten policies, procedures, and directives promulgated by US Cargo. deliveries throughout the day. US Cargo keeps track of Plaintiff's progress throughout the day and would contact Plaintiff during the day if the Plaintiff fell behind schedule.

23. Plaintiff received approximately two days of training upon hire, which included training on compliance with all of US Cargo's policies and procedures, training on routes, how to properly use the scanners, and how to properly fill out the daily paperwork.

24. While making deliveries for US Cargo, Plaintiff was required to carry a US Cargo identification badge and was required to wear a US Cargo uniform, which included shirts and other apparel containing the US Cargo logo, such as winter jackets and hats.

25. Although Plaintiff was required to purchase or lease a vehicle to use while working for Defendant and to purchase uniforms to wear in the performance of his work, US Cargo required US Cargo signage and logos on trucks and uniforms, which ultimately prevented Plaintiff from using the vehicle and uniforms to offer services to the general public. The US Cargo logo was permanently affixed to both doors of Plaintiff's vehicle, which Plaintiff leased from US Cargo during the last year and a half of his employment.

26. US Cargo determined the number of assigned packages that the Plaintiff would

5

deliver on behalf of US Cargo, and retained the exclusive right to set the delivery and pick-up charges. Plaintiff had no control over the amount he was paid for such packages.

27. Pursuant to US Cargo's common business practices, Plaintiff's opportunity for profit or loss is determined almost completely by US Cargo, and Plaintiff had virtually no control over the factors determining the level of profit or loss.

28. U.S. Cargo determined set Plaintiff's compensation by choosing the route assigned to Plaintiff an calculating his compensation based upon an algorithm developed by U.S. Cargo

29. US Cargo reduced the payments earned by Plaintiff to account for various deductions, charges, and/or expenses, including scanning equipment, loss or damaged shipments, certain transportation expenses, and any other expenses US Cargo incurred on behalf of Plaintiff.

30. US Cargo has employed at more than fifty (50) Ohio misclassified delivery drivers during relevant times.

31. During all times material to the Complaint, US Cargo had operational control over significant aspects of Plaintiff's day-to-day functions, the authority to hire, fire, and discipline employees, including Plaintiff, the authority to set rates and methods of compensation, and the authority to control the work schedules and employment conditions.

32. Plaintiff was paid a fixed daily flat rate regardless of how many hours he worked, and $3.00 per stop, and was paid $3.00 for each stop assigned to him on his route. Plaintiff would regularly arrive to the US Cargo warehouse around 6:30 A.M. and would return to the warehouse around 7:00 P.m. or 8:00 P.M. Upon arrival at the US Cargo warehouse, Plaintiff would receive a Preliminary Manifest from a US Cargo employee, load freight onto his vehicle, turn in paperwork to a US Cargo Shift Supervisor, who would then give Plaintiff a MapQuest print-off of his route for the day. When Plaintiff returned to the US Cargo warehouse at the end of the day, a US Cargo

6

Shift Supervisor would check Plaintiff's computer scans to make sure they were accurate before Defendant released Plaintiff from work for the day. Plaintiff estimates that he spent approximately twenty (20) to twenty-five (25) completing paperwork for Defendant.

33. As a US Cargo driver, Plaintiff regularly worked more than forty (40) hours per week; typically Plaintiff worked approximately six (6) days per week for approximately twelve (12) to thirteen 13) hours per day, for a total of approximately seventy-two (72) to seventy-eight (78) hours per week. Plaintiff had no opportunity to contract with other vendors or distributors.

34. US Cargo was aware that Plaintiff worked more than forty (40) hours per workweek, yet failed to pay Plaintiff overtime compensation for any of the hours worked over forty (40) in a workweek.

35. Plaintiff did not have the discretion or authority to make any decisions with respect to matters of significance and was required to follow the policies, practices, and procedures set by US Cargo, as well as state and federal regulations, and did not have any independent authority to deviate from these policies, practices, and procedures.

## CLAIMS FOR RELIEF

### COUNT I:
### VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA")

36. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

37. The FLSA requires that employees receive overtime pay of "not less than one and one-half times" their regular rate of pay for hours worked over forty (40) in a workweek, *see* 29 U.S.C. § 207(a)(1), and employees paid on a job-rate basis are entitled to such overtime premium pay, *see, e.g.*, 29 C.F.R. § 778.112.

38. At all times material to this Complaint, Plaintiff was an "employee" within the

meaning of 29 U.S.C. §§ 203(e) and 207(a).

39. Defendants are employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

40. At all times material to this Complaint, Defendants have jointly suffered or permitted Plaintiff to work for them as a delivery driver. Furthermore, applying the economic realities test, Defendants have jointly misclassified Plaintiffs and the Class Members as independent contractors.

41. Defendant failed to pay Plaintiff the overtime wages to which he was entitled under the FLSA.

42. Defendant willfully and recklessly violated the FLSA with respect to Plaintiff by failing to pay him the required overtime premium.

43. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

44. As a result of Defendant's willful violations of the FLSA, Plaintiff suffered damages by being denied overtime wages in accordance with 29 U.S.C. §§ 201, *et seq*.

45. As a result of the unlawful acts of Defendant, Plaintiff has been deprived of overtime compensation and other wages in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to the FLSA.

## COUNT II
### OVERTIME VIOLATIONS OF THE OHIO WAGE ACT

46. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

47. The Ohio Wage Act requires that employees receive overtime compensation "not

less than one and one-half times" (1.5) the employee's regular rate of pay for all hours worked over forty (40) in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1).

48. During all times material to this Complaint, Plaintiff was jointly employed by Defendants, and Defendants are employers covered by the overtime requirements under the Ohio Wage Act.

49. During all times material to this Complaint, Plaintiff worked in excess of the maximum weekly hours permitted under O.R.C. § 4111.03, but was not paid overtime wages for this time spent working.

50. During all times material to this Complaint, Defendant failed to pay Plaintiff overtime compensation at time and a half (1.5) of his regular rate of pay for hours in a work week in excess of forty (40).

51. During all times material to this Complaint, Plaintiff has not been exempt from receiving overtime benefits under the Ohio Wage Act because, *inter alia*, he was not an "executive," "administrative," or "professional" employee, as those terms are defined under the FLSA. *See* O.R.C. § 4111.03(A); *see also* 29 C.F.R. §§ 541.0, *et seq*.

52. During all times material to this Complaint, Plaintiff has not been exempt under any other exemption.

53. The Ohio Revised Code requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiff is entitled to review the relevant records of hours worked to determine the exact amount of overtime wages owed by Defendant. Absent Defendant keeping these records as required by

law, Plaintiff is entitled to submit his information about the number of hours worked.

54. Pursuant to the Ohio Revised Code, Plaintiff is entitled to attorneys' fees and costs incurred.

## COUNT III
## VIOLATION OF THE OPPA

55. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

56. During relevant times, Defendants were entities covered by the OPPA and Plaintiff has been jointly employed by Defendants within the meaning of the OPPA.

57. The OPPA requires that Defendant pay Plaintiff all wages, including unpaid overtime, on or before the first day of each month, for wages earned by him during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by him during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

58. During relevant times, Defendant did not pay Plaintiff d all of his wages, including overtime wages at one and one-half times his regular rate within thirty (30) days of performing the work. *See* O.R.C. § 4113.15(B).

59. Plaintiff's unpaid wages remain unpaid for more than thirty (30) days beyond his regularly scheduled payday.

60. In violating the OPPA, Defendant acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

## COUNT IV
## UNJUST ENRICHMENT

61. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

62. Defendants have been financially enriched by subjecting Plaintiff to deductions, charges, and/or expenses that typically are borne by employers (including many of Defendants' business competitors).

63. The financial enrichment enjoyed by Defendants has come at the expense of Plaintiff who has borne the improper deductions, charges, and/or expenses.

64. It is against equity and good conscience to permit Defendants to retain such improper deductions, charges, and/or expenses.

65. Defendants should be required to reimburse Plaintiff for such improper deductions, charges, and/or expenses under the doctrine of unjust enrichment.

## COUNT V
## CONSTRUCTIVE TRUST AND OTHER EQUITABLE RELIEF

66. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

67. As a result of the denial of benefits, reimbursements and compensation to the Plaintiff, along with the facts alleged above, equity requires that a constructive trust be established over the unjust profits retained by US Cargo. Defendant should be ordered to disgorge the rightful portion of the profits that should have been paid to the Plaintiff and Classes in the form of compensation, reimbursements, and benefits. Additionally, Plaintiff prays for such other equitable relief as this Court deems appropriate.

**PRAYER FOR RELIEF**

A. Awarding to the Plaintiff unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by FLSA;

B. Awarding Plaintiff compensation for the improper deductions, charges, and/or expenses by US Cargo that Plaintiff was required to bear;

C. Awarding of Plaintiff compensation for damages and any other recovery available pursuant to the Ohio Wage Act, the OPPA and Ohio Revised Code Chapter 4112;

D. Punitive damages against Defendant for their willful, wanton, and egregious conduct, in an amount calculated to deter such future conduct, as may be determined by a jury;

E. Awarding Plaintiff such other and further relief as the Court deems just and proper;

F. Issuing an injunction prohibiting Defendant from engaging in future violations of the FLSA, the Ohio Wage Act and the OPPA; and

G. Rendering a judgment against Defendant, for all damage, relief, or any other recovery whatsoever.

Date: April 23, 2019 

Respectfully submitted,

*/s/ Jessica R. Doogan*
Jessica R. Doogan (OH Bar No. 0092105)
Robert E. DeRose (OH Bar No. 0055214)
Trent R. Taylor (OH Bar No. 0091748)
**BARKAN MEIZLISH DEROSE WENTZ MCINERNEY PEIFER, LLP**
250 E. Broad St., 10th Floor
Columbus, Ohio 43215
Telephone: (614) 221-4221
Fax: (614) 744-2300
Email: jdoogan@barkanmeizlish.com
        bderose@barkanmeizlish.com
        ttaylor@barkanmeizlish.com

12

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all claims so triable.

>*/s/ Jessica R. Doogan*
>Jessica R. Doogan

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all claims so triable.

*/s/ Jessica R. Doogan*
Jessica R. Doogan